IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NAI MOBILE, LLC, ) | |
| ) | |
|     Plaintiff/Counter-Defendant, ) | |
| ) | |
| vs. ) | CIVIL ACTION NO. 21-0032-KD-N |
| ) | |
| NEW AMERICA NETWORK, INC., ) | |
| d/b/a NAI GLOBAL, ) | |
| ) | |
|     Defendant/Counter-Plaintiff. ) | |

## ORDER

This action is before the Court on the Motion for Summary Judgment and Supporting Memorandum filed by Defendant/Counter-Plaintiff New America Network, Inc. d/b/a NAI Global (Docs. 42, 43, 44); the Response filed by Plaintiff/Counter-Defendant NAI Mobile, LLC (Doc. 50); and Defendant/Counter-Plaintiff's Reply (Doc. 52), and the Motion for Partial Summary Judgment filed by Plaintiff/Counter-Defendant (Doc. 46); the Response filed by Defendant/Counter-Plaintiff (Doc. 48); and Plaintiff/Counter-Defendant's Reply (Doc. 54).

**I.**     **Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Rule 56(c) provides as follows:

> *(c) Procedures*
> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> ***(2) Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> ***(3) Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.
>
> ***(4) Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. 56(c).

The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323.  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992).

**II.**     **Background**

New America Network Inc., ("Global") is an international commercial real estate brokerage firm with over 375 offices scattered throughout multiple continents. NAI Mobile, LLC, now doing business as CRE Mobile, ("NAI-Mobile") is a commercial real estate firm that operates out of Mobile and Baldwin Counties in Alabama. NAI-Mobile and Global entered into a NAI Global Members Agreement (the "Agreement") on November 21, 2017, that permitted NAI-Mobile to use the NAI name and logo ("Service Mark") and obligated Global to provide support structure, market access, marketing assistance, and industry resources to NAI-Mobile.

In pertinent part, the Agreement's provisions contain the following:

6.03     All right, title and interest in and to the Service Marks and the goodwill associated therewith shall remain solely in NAI, subject only to the limited rights granted herein to MEMBER to use the Service Marks. **MEMBER shall not and shall not authorize, permit, induce or assist any third party to**: (i) take any action or undertake any application or registration that would otherwise convey, represent or grant a right or interest in the Service Marks; (ii) contest or take any action to contest ownership or validity of the Service Marks; (iii) except as expressly permitted in Section 6.04 below, attempt to register any Service Marks or marks that incorporate or are similar or confusingly similar to any Service Mark in any jurisdiction or manner, including corporate name registrations, d/b/a filings, domain name registrations, metatags, meta descriptions, email addresses, search engine terms and trademark applications or registrations in any jurisdiction throughout the world; (iv) **take or permit any act or undertaking that does or would reasonably be likely to prejudice, infringe or impair the rights of NAI with respect to the Service Marks**; and/or (v) assert or claim any interest in the Service Marks.

6.05     MEMBER agrees to use the Service Marks and operate its brokerage business in conjunction with such use of the Service Marks so as to preserve, maintain and enhance the Service Marks and the reputation and goodwill established by NAI and the Network. MEMBER shall cooperate with NAI in taking all appropriate measures for the protection of the Service Marks and shall faithfully observe and execute the requirements, procedures and directions of NAI with respect to the use and protection of the Service Marks. **Member shall not take any action or provide any goods or services in connection with or under the Service Marks that damages or reflects adversely on NAI, its subsidiaries or affiliate companies or any of their Service Marks, trade names or domain names, including, without limitation, using the Service Marks in any way which would tend to allow the Service Marks to become generic, lose their distinctiveness or be detrimental to or inconsistent with the good name, goodwill, reputation and image of NAI or any of its subsidiaries or affiliate companies**.

6.06   To ensure MEMBER's compliance with this Agreement at any time throughout the Term and from time-to-time thereafter as necessary for NAI to ensure MEMBER's compliance with this Agreement, NAI or its affiliates or agents may conduct inspections ("Inspections") on the premises of the business of MEMBER and of all materials on which the Service Marks appear. MEMBER shall provide samples of all such materials promptly upon the request of NAI. **If NAI, in its sole and absolute discretion, believes that MEMBER** has not maintained the requisite level of quality in the business or **has violated this Agreement in respect of any of the Service Marks** (each, a "Violation") by, among other things, continuing to use the Service Marks after the end of the Term or registering any trade name, domain name or trademark in violation of Section 6.04 above, NAI will provide MEMBER with written notice of such belief and MEMBER will have a period of seven (7) calendar days to cure the Violation at MEMBER's sole cost and expense. If MEMBER has failed to cure any Violation to NAl's satisfaction, in the sole and absolute discretion of NAI, on or before the last day to cure the noticed Violation, NAI shall have the absolute right to terminate the license to the SERVICE MARKS granted pursuant to this Agreement upon written notice to MEMBER. Without limiting the foregoing, **NAI may terminate MEMBER's rights under this Article 6 effective immediately upon receipt of written notice by MEMBER in the event NAI determines that any Violation is incapable of cure**.

8.01   MEMBER shall maintain (i) a staff of qualified real estate brokers, associates, and support personnel capable of providing a full-range of office, retail and industrial Commercial Real Estate Services and (II) all required real estate brokerage or other licenses or permits necessary or appropriate for MEMBER to perform all of its obligations under this Agreement. MEMBER must regularly advise NAI of the names of all MEMBER's licensed real estate employees, independent contractors or others engage in Commercial Real Estate activities for or on behalf of MEMBER. MEMBER shall designate at all times at least one (1) individual authorized to represent MEMBER in all Network activities and in any matters or transactions arising out of this Agreement or otherwise involving NAI (the "Authorized Representative"). MEMBER must remain in good standing and qualified to do business in all state(s) in which MEMBER operates or does business; and, MEMBER shall, upon request by NAI, promptly provide NAI with certificate(s) of good standing as to MEMBER issued by such state(s). **MEMBER shall refrain from making any disparaging remarks regarding NAI and from any other action that could have an adverse effect on the reputation or business of NAI in the reasonable judgment of NAI.**

(Docs. 43-1, 46-1) (emphasis added).

NAI-Mobile principal and industrial consultant Pete Riehm participates in a conservative talk show called "Common Sense Radio," where he is identified as being affiliated with NAI-Mobile. (Doc. 8-1 at 3). Riehm helped organize[1] a group of people to travel to Washington D.C.

---

[1] Riehm sent an email from his NAI-Mobile email address spreading awareness about the trip to Washington D.C. (Doc. 43-2 at 15).

to protest, on January 6, 2021, the results of the presidential election. (Doc. 43-2 at 15). Following the ensuing protests and rallies, Riehm was interviewed by local media to discuss his experience at the Capitol. Riehm said "[Congress] went into recess because they felt threatened. Hopefully they realize we are very unhappy. And if [Congress] feel[s] threatened now, wait until we come back." (Doc. 43-7 at 3). The FBI then made contact with Riehm regarding his time at the Capitol on January 6, 2021, and interviewed him at the NAI-Mobile office. (Doc. 43-2 at 7-8). On January 13, 2021, out of concerns for damage to the reputation of the NAI brand, Global contacted NAI-Mobile requesting NAI-Mobile to terminate Riehm's employment and issue a statement condemning the violence that occurred at the Capitol. (Doc. 43-2 at 17). NAI-Mobile did not terminate Riehm or issue a statement.

As a result of NAI-Mobile's failure to terminate Riehm and concern for damage to the reputation of the NAI brand, Global terminated the Agreement with NAI-Mobile on January 15, 2021. (Doc. 43-1 at 5; Doc. 43-11 at 4). This resulted in NAI-Mobile's website being shut down and NAI-Mobile employees losing access to their business email accounts, in addition to NAI-Mobile being unable to use any NAI Service Marks or resources.

NAI-Mobile initiated this action against Global on January 15, 2021, pursuant to 28 U.S.C. § 1332 for breach of contract (Count I). Global then filed a counterclaim on February 16, 2021, for breach of contract (Count I); trademark dilution (Count II); and indemnification (Count III). Global moved for summary judgment as to NAI Mobile's claims. NAI-Mobile also moved for summary judgment as to Global's counterclaim for breach of contract and damages claimed.

### III. Analysis

After careful review of the Motions for Summary Judgment, the Court finds there are issues of fact (and law) that remain as to each claim. Therefore, summary judgment is DENIED.

Global asserts that in its "sole and absolute discretion," as set forth in the Agreement, it properly terminated the Agreement with NAI-Mobile based on the political activity of Pete Riehm, a principal in NAI-Mobile. Global is correct that if NAI-Mobile violated the Agreement exercise of discretion is only checked by whether the decision was arbitrary or irrational. The leap that Global asks this Court to make, without any law in support, is that possible harm to the reputation of Global is covered under the prohibition against violating the Agreement "in respect to the Service Marks," i.e., Section 6.

Initially in the termination letter to NAI-Mobile, Global asserted that NAI-Mobile had violated section 6.05 of the Agreement. Section 6.05 provides in relevant part: **Member shall not take any action or provide any goods or services in connection with or under the Service Marks that damages or reflects adversely on NAI, its subsidiaries or affiliate companies or any of their Service Marks, trade names or domain names, including, without limitation, using the Service Marks in any way which would tend to allow the Service Marks to become generic, lose their distinctiveness or be detrimental to or inconsistent with the good name, goodwill, reputation and image of NAI or any of its subsidiaries or affiliate companies**. But as NAI-Mobile points out, NAI-Mobile is the Member and there is no evidence before the court that NAI-Mobile took "any action …in connection with or under the Service Marks."

Global now asserts that they had the right, in their sole discretion, to terminate because NAI-Mobile violated section 6.03 of the Agreement. Global argues that anything that possibly

6

harms the reputation of the business harms the Service Mark and that Mr. Riehm "took actions that were potentially very damaging to the NAI Mark <u>by association</u>." (emphasis added)  Section 6.03 provides in relevant part: **MEMBER shall not and shall not authorize, permit, induce or assist any third party to take or permit any act or undertaking that does or would reasonably be likely to <u>prejudice</u>, <u>infringe</u> or <u>impair</u> <u>the rights</u> of NAI with respect to the Service Marks.** (emphasis added). This provision appears to be directed toward the protection of the Service Mark against infringement or dilution (i.e., tarnishment).  Global's reading of the protections afforded by this section appears to be overbroad.  This is because any act that would likely "prejudice, infringe or impair the rights of NAI with respect to the Service Marks," would require the use of the Service Mark (or a confusingly similar Mark).  There is no evidence that Riehm used the Service Mark in relation to his political activities.  At this point, the Court is not convinced that there is any evidence or law to support that 6.03 is implicated by the actions of Riehm.  At the least, further briefing is required on the issue.

However, Riehm's actions may subject NAI-Mobile to proper termination of the Agreement under Section 8.01: **MEMBER shall refrain from … any other action that could have an adverse effect on the reputation or business of NAI in the reasonable judgment of NAI.**  Global determined that NAI-Mobile's refusal to terminate Riehm (based on Riehm's political activities) could have an adverse effect on the reputation of Global.  Whether this determination was reasonable in light of the facts is a jury issue.  Accordingly, summary judgment is denied as to each parties' breach of contract claim. Moreover, as to both parties request for summary judgment as to damages, such is premature and each is denied as issues of fact remain which preclude summary judgment at this stage.

## **IV.**    **Conclusion**

Defendant/Counter-Plaintiff Global's Motion for Summary Judgment (Doc. 42) is **DENIED**. Plaintiff/Counter-Defendant NAI-Mobile's Motion for Partial Summary Judgment (Doc. 46) is **DENIED**. It is **ORDERED** that this case is set for **pre-trial conference** on **March 17, 2022 at 9:30** a.m. **Jury selection** will be held on **April 5, 2022 at 8:30 a.m**.  Trial will start immediately thereafter.

**DONE** and **ORDERED** this the 15th day of **February 2022.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**