IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NAI-MOBILE, LLC, a limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>NEW AMERICA NETWORK, INC., a foreign corporation, d/b/a Global,<br><br>    Defendant. | CASE NO: 1:21-cv-32-KD-C |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION
IN LIMINE TO EXCLUDE DEFENDANT'S EXHIBIT 52**

    Defendant New America Network, Inc. ("NAI Global") respectfully files this response in opposition to Plaintiff NAI-Mobile, LLC's ("NAI-Mobile") Motions in Limine ("Motions") to Exclude NAI Global's Exhibits 50, 52, 53, 57, and 61 (the "Exhibits"). (Dkt. Nos. 89-90, 92-94.)[1] Each of the Exhibits was first produced during the deposition testimony of NAI-Mobile's[2] branding expert, Mr. Jake McKenzie. The Exhibits were not and are not offered to prove the truth of the matters asserted within the Exhibits themselves. Rather, these Exhibits are offered for two important but distinct purposes: (1) to rebut Mr. McKenzie's simply incorrect assertion that the media coverage of Mr. Riehm's incendiary statements was "extremely limited in its reach"; and (2) to illustrate the climate in which NAI Global terminated the Agreement by highlighting various

---

[1] Although NAI-Mobile has filed five separate motions in limine, all five motions are nearly identical. As such, NAI-Mobile will file a near identical response to all of NAI-Mobile's motions in limine. This particular response is a reply to NAI-Mobile motion to exclude Defendant's Exhibit 52.

[2] To be clear, unlike what is stated in NAI-Mobile's motions in limine (Motions ¶ 2), Mr. McKenzie is *NAI-Mobile's* expert witness, not NAI Global's.

1

comments which indicate the effect of Mr. Riehm's interview on the general public.

For example, despite the fact that Mr. McKenzie testified that only 32 individuals interacted with the ABC 33/40 report containing Mr. Riehm's comments, Exhibit 50 indicates that this clip was shared 268 times and commented on 572 times. (Dkt. No. 107-1 at 59:6-60:12.) Likewise, Exhibits 52 and 53 indicate that a media report out of Beaumont, Texas which included Mr. Riehm's incendiary statements was viewed 39,000 times, shared 6 times, and commented on 50 times, and yet Mr. McKenzie testified that he did not even analyze how many individuals saw this video (Dkt. No. 107-1 at 76:12-77:7.) And although Mr. McKenzie's rebuttal report claims that the ABC 33/40 article was *never* shared on Twitter at all (Dkt. No. 107-2 at 5), Exhibit 57 shows this is patently false. Ultimately, despite Mr. McKenzie's claim that media coverage of Mr. Riehm's statements was extremely limited and received virtually no traction online, Exhibit 61 shows that four of the media reports about Mr. Riehm's statements received over 8,800 different kinds of interaction on Facebook alone. If the Court excludes this pertinent impeachment evidence (and does not exclude Mr. McKenzie as requested in NAI Global's *Daubert* motion (Dkt. Nos. 59 and 60)), Mr. McKenzie will be able to provide the jury with testimony that is clearly incorrect, if not blatantly false.

Similarly, the entire focus of this case is NAI Global's concern that Mr. Riehm's comments, and NAI-Mobile's refusal to take appropriate actions in response, would cause NAI Global irreparable harm to its brand. As such, the comments of various members of the general public in response to Mr. Riehm's statement can provide the jury with an understanding of the environment in which NAI Global made the decision to terminate the Agreement.

NAI-Mobile claims that the comments in the Exhibits are "varied in nature." (Motions ¶ 11.) While there may be some comments which are supportive of the January 6 rally generally,

none are directly supportive of Mr. Riehm's statements. Rather, these statements clearly indicate that many in the general public thought that Mr. Riehm's statement "sounds like a threat" (Exhibit 50), was an attempt to "threaten public officials openly (*id.*), was "a domestic terrorism threat" (*id.*), or was otherwise worth the attention of the FBI (Exhibits 50 and 53). While the Exhibits are in no way being offered to prove that Mr. Riehm was engaging in any acts of domestic terrorism worthy of the FBI's attention, the comments in the Exhibits indicate that many in the general public *thought* they were. The comments within the Exhibits are crucial to illustrate the effect that Mr. Riehm's statements had on the listeners in the general public, and the potential impact those same comments could have on NAI Global should Mr. Riehm's statements be tied to NAI Global.

In the Motions, NAI-Mobile complains that the Exhibits were not produced until the deposition Mr. McKenzie on November 11, 2021, "a mere eight (8) days before the close of discovery." (Motions ¶ 1.) However, the Exhibits were introduced in Mr. McKenzie's deposition in direct rebuttal to the claims in Mr. McKenzie's Rebuttal Report that the media coverage of Mr. Riehm's statements "was very limited." Mr. McKenzie's Rebuttal Report was not provided to NAI Global until November 5, 2021. (Dkt. No. 107-3) Therefore, any delay in producing the Exhibits to NAI-Mobile is only a function the timing of the production of Mr. McKenzie's Rebuttal Report. In any event, as NAI-Mobile pointed out, the Exhibits were provided to NAI-Mobile prior to the close of discovery and NAI-Mobile has shown no prejudice by the timing of their production. Further, all of these exhibits consist of publically available information that anyone could find. It was not secret information in the possession of NAI Global. All Plaintiff had to do was look at the Riehm interview as it appears all over social media and read the comments. There is no unfair surprise.

NAI-Mobile also argues that no NAI Global employees testified that they reviewed or

considered the Exhibits in deciding to terminate the Agreement with NAI-Mobile. (Motions ¶ 7.) However, NAI Global President Jay Olshonsky testified in his deposition that in the process of determining whether to terminate the Agreement, "[w]e also reviewed additional coverage of [Mr. Riehm's interview], that was then relayed through various media sources across southern Alabama in the public domain via the internet . . . ." ( Dkt. No. 107-4 at 48:15-18.) Although Mr. Olshonsky did not identify the specific media reports in the Exhibits, Mr. Olshonsky was clearly aware that the statements in Mr. Riehm's interview had been widely distributed throughout Southern Alabama and elsewhere on the internet. Likewise, Lindsay Fierro testified that she presented the management team with some concerns that she had that she "found on Facebook." (Dkt. No. 107-5 at 133:17-20.) The Exhibits are exactly the kinds of media sources shared within the public domain that Mr. Olshonsky was referring to in his deposition.

NAI-Mobile also claims that "no testifying fact or expert witness has authenticated the exhibit . . . ." (Motions ¶ 9.) However, "[t]o authenticate a document," Federal Rule of Evidence 901 "only requires a proponent to present 'sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be.'" *United States v. Lebowitz*, 676 F.3d 1000, 1009 (11th Cir. 2012) (quoting *United States v. Belfast*, 611 F.3d 783, 819 (11th Cir. 2010)). Rule 901 "require[s] only enough evidence that a jury could have reasonably concluded that a document was authentic." *United States v. William*s, 865 F.3d 1328, 1343 (11th Cir. 2017) (citation and internal quotation marks omitted). "E-mails and other electronic records are authenticated under Federal Rule of Evidence 901(b)(4), under which evidence may be authenticated by its 'appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.'" *Holmes v. N. Tex. Health Care Laundry Coop. Ass'n*, 304 F. Supp. 3d 525, 535 (N.D. Tex. 2018) (quoting Fed. R. Evid. 901(b)(4)).

4

As discussed above, Mr. Olshonsky has already testified that in the process of determining whether to terminate the Agreement he reviewed additional coverage of Mr. Riehm's interview through various sources on the internet. As such, even if Mr. Olshonsky cannot testify that he reviewed these specific Exhibits in the process of terminating the Agreement, he can testify that the "appearance, contents, substance, internal patterns, and other distinctive characteristics" of the Exhibits are consistent with what he reviewed in January of 2021. As such, Mr. Olshonsky can provide the sufficient testimony to authenticate the Exhibits.

Finally, NAI Global is not aware of any comments within the Exhibits that could possibly be considered "racially charged." (Motions ¶12.) Nonetheless, to the extent that comment exist, NAI Global would have no issues redacting such comments from the Exhibits, as NAI Global agrees that they would not be pertinent to this litigation. However, any isolated racially charged comments, to the extent they exist at all, do not warrant the complete exclusion of these otherwise relevant Exhibits. However, comments that are considered "politically charged" are entirely relevant to this case, as they are indicative of the fraught political environment in which Mr. Riehm's comments were shared.

If the Court excludes these exhibits, it will deny the jury the opportunity to evidence that directly contradicts the assertions made by Mr. McKenzie. Without these Exhibits, Mr. McKenzie will simply be able to share false information with the jury. Further, the various comments contained in the Exhibits are crucial to provide the jury an understanding of the potential effect that Mr. Riehm's comments had on listeners, which would directly affect the potential impact on NAI Global's brand as a result. Therefore, NAI Global respectfully requests that the Court deny NAI-Mobile's Motions to exclude the Exhibits, so that this crucial and relevant information is not withheld from the jury.

| | |
|---|---|
| Dated: April 4, 2022 | Respectfully submitted, |
| | |
| | */s/ Paige Waldrop Mills* |
| | |
| | Paige W. Mills (#016218)<br>**Bass, Berry & Sims, PLC**<br>150 Third Avenue South, Suite 2800<br>Nashville, TN 37201<br>Tel: 615-742-7770<br>Fax: 615-742-0429<br>Email: pmills@bassberry.com |
| | |
| | Diane B. Maughan (MAUGD4912)<br>**Phelps Dunbar**<br>2001 Park Place North, Suite 700<br>Birmingham, Alabama 35203<br>Telephone: (205) 716-5200<br>Email: Diane.maughan@phelps.com |
| | |
| | Jarrod J. White (WHITJ1010)<br>**Phelps Dunbar**<br>63 S. Royal Street, Suite 700<br>Mobile, Alabama 36602<br>Telephone: (251) 415-7300<br>Facsimile: (251) 415-7350<br>Email: jarrod.white@phelps.com |
| | |
| | ***Counsel for Defendant*** |

**CERTIFICATE OF SERVICE**

I hereby certify that, a true and exact copy of the foregoing has been served upon the following via e-mail on this 4th day of April, 2022.

Tiffany N. Ray
Steven A. Martino
Taylor Martino, P.C.
455 Saint Louis Street, Suite 2100
Mobile, Alabama 36602
Phone: (251) 433-3131
Fax: (251) 433-4207
tiffany@taylormartino.com
steve@taylormartino.com

C. William Daniels (DANIC4169)
Michael D. Strasavich (STRAM9557)
Burr & Forman LLP
P.O. Box 2287
Mobile, Alabama 36652
Telephone: (251) 344-5151
Fax: (251) 344-9696
bdaniels@burr.com
mstrasavich@burr.com

                                         */s/ Paige Waldrop Mills*
                                         Paige W. Mills