IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NAI MOBILE, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL ACTION NO. 21-00032-KD-C |
| | ) |
| NEW AMERICA NETWORK, INC., | ) |
| d/b/a NAI GLOBAL, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This action is before the Court on Plaintiff NAI Mobile, Inc.'s brief in support of its claim for damages (doc. 100) and the response filed by Defendant NAI Global (doc. 113). After consideration and for reasons stated *infra*, the Court finds as a matter of law that **if NAI Mobile succeeds on its claims for lost profits or other damages, such shall be limited to the time period between January 15, 2021 and April 1, 2022.**

I. Background

NAI Mobile and NAI Global were parties to a Member Agreement (doc. 100-1). The term of the Agreement was from April 1, 2018 to March 31, 2025 (Id.). On January 15, 2021, NAI Global terminated the Agreement based on the alleged default of NAI Mobile. On January 21, 2021, NAI Global invoiced NAI Mobile for Annual Membership Fees and Annual Marketing Assessments in the total amount of $177,327.00, the sum due through March 31, 2025.

NAI Mobile sued for breach of the Agreement (doc. 3). In relevant part, NAI Global counterclaimed for breach alleging that NAI Mobile's actions regarding the conduct of one of its members constituted a default and that pursuant to § 14.01 of the Agreement, this default

accelerated all Annual Membership Fees and Annual Marketing Assessments (doc. 8).

NAI Mobile moved for partial summary judgment on the issue of damages for NAI Global's counterclaim (doc. 46). NAI Mobile conceded that it stopped paying these fees "after NAI Global wrongfully terminated" the Agreement (Id., p. 18). In part, NAI Mobile argued there was no breach of the Agreement, and therefore, NAI Global had no legal cause to terminate. In response, NAI Global argued that a default was triggered, and it was entitled to recover fees for the remainder of the term of the Agreement, through March 31, 2025. (doc. 48). The partial motion was denied on the basis that the request for summary judgment on damages was premature because issues of fact remain as to whether NAI Global wrongfully terminated the contract or whether NAI Mobile defaulted. (doc. 66, p. 7).

NAI Global also moved for summary judgment in its favor as to any claim by NAI Mobile for damages arising after March 31, 2022 (doc. 43). NAI Global argued that "under the terms of the Agreement, NAI Global was within its rights to terminate the Agreement for any reason after March 31, 2022 (so long as it provided nine-month's notice)" and that "NAI-Mobile cannot claim it had a reasonable expectation of profits after that date, as the Agreement could be terminated at any time for any reason." (Id., p. 20). NAI Global also argued that "[e]ven if the Court determines that NAI Global's termination of the Agreement was premature (which NAI Global denies), it is undisputed that it gave written notice of termination on January 15, 2021, more than nine months prior to March 31, 2022." (Id. p. 20-21). The motion was denied, in part, on basis that the request for summary judgment on damages was premature because issues of fact remain as to whether NAI Global wrongfully terminated the contract or whether NAI Mobile defaulted. (doc. 66, p. 7).

At the final pretrial conference, the Court allowed additional briefing on the question of

whether an award could be made for any damages after March 31, 2022, since the Agreement allowed either party to terminate at any time after that date, upon nine (9) months written notice to the other party. In other words, whether damages for both parties would be capped on March 31, 2022, instead of March 31, 2025.[1]

II. Member Agreement

The relevant terms of the Member Agreement, provide as follows:

Article 4. Term.

4.01 The term of this Agreement shall commence on April 1, 2018 and shall end on March 31, 2025 (such Term, as the same may be extended by mutual written agreement, is referred to as the "Term") . . .

4.02 This Agreement may be terminated by either party at any time after March 31, 2022, with nine (9) months written notice to the other party. In the event of such termination, MEMBER shall have no further obligation for any Membership and Marketing Assessment Fees under Section 5.02 beyond the effective Termination Date. Absent such termination or otherwise under the terms hereof, this Agreement will remain in full force and effect for its entire Term. . . .

Article 5. Fees. . . .

5.02 Membership and Marketing Assessment Fees. MEMBER shall pay the fees and assessments set forth in this Section 5.02 as they become due and such fees and assessments are in addition to other compensation to be paid to NAI...
(a) Annual Membership Fee. MEMBER shall pay Annual Membership Fees ... during the respective years of this Agreement payable in quarterly installments. During the Term of this Agreement, quarterly installments will be made to NAI as set forth on Exhibit A attached hereto and incorporated by reference herein.

---

[1] NAI Mobile calculated its damages through March 31, 2022 as lost profits of $1,179,000 plus expenses of $86,437 for a total of $1,265,437, and damages through March 31, 2025 as lost profits of $4,385,000 plus expenses of $86,437 for a total of $4,471,437 (doc. 43, citing NAI Mobile's expert report. NAI Global invoiced $53,155.00 for the term ending March 31, 2022 and invoiced $177,327.00 for the term ending March 31, 2025.

>(b) Annual Marketing Assessment. MEMBER shall pay an Annual Marketing Assessment . . . equal to fifteen percent (15%) of MEMBER's Annual Membership Fee. MEMBER's Annual Marketing Assessment shall be paid at the same time as the Annual Membership Fee as set forth on Exhibit A attached

(Doc. 100-1, p. 2).

>Exhibit A to the Agreement clarifies as follows:
>
>Annual Membership Fee and Annual Marketing Assessment
>
>(a). Annual Membership Fee.
>
>In each Contract Year, MEMBER shall pay an Annual Membership Fee of Thirty-six Thousand Two Hundred Eighty Dollars ($36,280.00), payable in quarterly installments of Nine Thousand Seventy Dollars ($9,070.00) on each April 1st, July 1st, October 1st and January 1st during the Term of this Agreement.
>
>(b) Annual Marketing Assessment.
>
>In each Contract Year, MEMBER shall pay an Annual Marketing Assessment in the amount of Five Thousand Four Hundred Forty-four Dollars ($5,444.00), payable in quarterly installments on One Thousand Three Hundred Sixty-one Dollars ($1,361.00) on the same dates as MEMBER's Annual Membership Fee.

(Doc. 100-1, p. 12).

>Article 6 provides in relevant part,
>
>6.05 MEMBER agrees to use the Service Marks and operate its brokerage business in conjunction with such use of the Service Marks so as to preserve, maintain and enhance the Service Marks and the reputation and goodwill established by NAI and the Network. MEMBER shall cooperate with NAI in taking all appropriate measures for the protection of the Service Marks and shall faithfully observe and execute the requirements, procedures and directions of NAI with respect to the use and protection of the Service Marks. Member shall not take any action or provide any goods or services in connection with or under the Service Marks that damages or reflects adversely on NAI, . . .   or any of their Service Marks, trade names or domain names, including, without limitation, using

>the Service Marks in any way which would . . . be detrimental to or inconsistent with the good name, goodwill, reputation and image of NAI . . ..
>
>6.06 . . . Without limiting the foregoing, NAI may terminate MEMBER's rights under this Article 6 effective immediately upon receipt of written notice by MEMBER in the event that NAI determines that any Violation is incapable of cure.

The sections of the Agreement cited by NAI Global, in its counterclaim (doc. 8, p. 8) states as follows:

>Article 12. Effect of Termination, Cancellation or Expiration of this Agreement.
>
>12.01. Termination, cancellation or expiration of this Agreement shall not relieve MEMBER of any unfulfilled monetary or other obligations created hereunder. . . .
>
>Article 14. Remedies for Breach
>
>14.01 Upon any Default by MEMBER, all unpaid Annual Membership Fees and Annual Marketing Assessments for the remainder of the Term shall be accelerated and immediately become due and payable in full. The obligation to pay Annual Membership Fees and Annual Marketing Assessments for the entire Term shall survive the expiration or early termination of this Agreement.

(Doc. 100-1, p. 7).

### III. Analysis

A. **NAI Mobile's argument that NAI Global breached the Agreement by wrongfully terminating the Agreement on January 15, 2021, and cannot mitigate its own breach by asserting it would have terminated it again after March 31, 2022.**

NAI Mobile argues that NAI Global breached the Agreement on January 15, 2021, when it terminated the Agreement without legal authority. NAI Mobile argues that since NAI Global terminated the Agreement in January, it could not terminate it again under § 4.02, effective

March 31, 2022. NAI Mobile argues that NAI Global cannot mitigate the damages, i.e., limit NAI Mobile's damages to the time period between January 15, 2021, to March 31, 2022, by arguing it "would have"[2] invoked § 4.02 had it not already terminated the Agreement. (Doc. 100, p. 4-5).

NAI Global argues that if it did not have discretion to terminate the Agreement immediately under Article 6, then it had the authority pursuant to § 4.02 to terminate the Agreement for any or no reason as of March 31, 2022. NAI Global argues that the January 2021 termination letter provided more than the nine-month notice necessary to terminate the Agreement as of March 31, 2022. (Doc. 113, p. 4-5).

Section 4.02 provides that the "Agreement may be terminated by either party at any time after March 31, 2022, with nine (9) months written notice to the other party." Although the written notice of termination did not specifically invoke Section 4.02, the notice gave the requisite notice. Thus, even if the jury finds that NAI Global wrongfully terminated the Agreement in January 2021, the provisions of Section 4.02 apply as a matter of law.

B. NAI Mobile's argument that NAI Global has "continuously asserted throughout this litigation that the Term runs through March 31, 2025, for purposes of their own damages[]" and thus cannot claim otherwise for purposes of NAI Global's counterclaim.

NAI Mobile argues that because NAI Global seeks damages under § 14.01 through March 31, 2025, while simultaneously arguing that NAI Mobile's damages are limited to March 31, 2022 pursuant to § 4.02, there is a question of fact for the jury as to when the Agreement

---

[2] The argument as to whether there is evidence that NAI Global "would have" terminated the Agreement under § 4.02, had it not already terminated the Agreement under § 14.01 is addressed in Section D.

terminates, and consequently, the end point for all damages. (Doc. 100, p. 5-6). NAI Mobile argues that a "judicial determination limiting [it] to recovering damages for an abbreviated time period that could only exist if Global had invoked Article 4.02 (which it did not) would deprive the jury of its decision-making process, particularly given Global's factual declaration that the contract term expires on March 31, 2025." (Id., p. 6). In support, NAI Mobile cites to Fed. R. Civ. P. 11(b)(3), apparently for the premise that by making this counterclaim, NAI Global has certified that "the factual contentions have evidentiary support" (Id., p. 5).

NAI Global points out the absence of case law supporting the argument that its claim for fees through March 2025, pursuant to § 14.01, precludes it from disputing NAI Mobile's claim for lost profits from 2022 to 2025. NAI Global also argues that reliance on Rule 11(b)(3) is misplaced. Specifically, the Rule prevents parties from filing factually and legally unsupported pleadings, but NAI Global's counterclaim is based on the express language of § 14.01, the default provision in the Agreement. NAI Global points out that NAI Mobile's "obligation to pay these fees" upon its default is based on the terms of the Agreement "and is entirely separate from its own speculative claim for lost profits" (doc. 113, p. 5-6).

Additionally, NAI Global also responds that NAI Mobile's argument is now moot. NAI Global states that because it "found another member for the Mobile territory, and mitigated its damages, it is only seeking these accelerated member and marketing fees through July 1, 2021, the date the new member began." (doc. 113, p. 5).

The Court agrees that NAI Global's assertion of a time limitation on damages as to NAI Mobile's claim does not limit the time period for damages as to NAI Global's counterclaim. There can be three outcomes to this litigation at trial:

    1) NAI Mobile defaulted and immediate termination was allowed. In this scenario, NAI

Global is entitled to recover damages for the full term (but taking into consideration any mitigation). If NAI Mobile defaulted, it is not entitled to cut-off damages early, as the only reason for termination was the default. The Agreement specifically states that "[u]pon default by MEMBER, all unpaid Annual Membership Fees and Annual Marketing Assessments for the remainder of the Term shall be accelerated and immediately become due and payable in full." (Doc. 100-1, p. 7, § 14.01).

2) NAI Mobile defaulted but immediate termination was not warranted.   In this scenario, it would appear that any damages incurred by NAI Global for the full term <u>may</u> be offset by any damages that NAI Mobile incurred as a result of being denied a period to cure the default.

3) NAI Mobile did not default and NAI Global wrongfully terminated the Agreement <u>early</u>. In this scenario, § 4.02 would apply – NAI Global terminated the Agreement effective April 1, 2022, with notice given in January 2021, more than nine months before March 31, 2022. Therefore, NAI Mobile cannot claim damages beyond March 31, 2022.

C. <u>NAI Mobile's argument that NAI Global's invoice and pleadings should be viewed as a judicial admission</u>.

NAI Mobile argues that NAI Global is bound by admissions in its pleadings because they are judicial admissions. NAI Mobile argues that NAI Global "should not be able to benefit from asserting that its claim for damages runs until the expiration of the March 31, 2025 term under the judicial admission rule, and then suddenly, on the eve of trial, assert a contrary position to [NAI Mobile's] detriment." (Doc. 100, p. 6-7).

NAI Global argues that its argument that it is entitled to damages for fees through March

8

2025 if NAI Mobile breach the Agreement, is not a judicial admission or clear, deliberate and unequivocal factual assertion that NAI Mobile's lost profits damages should also be recoverable through March 2025. NAI Global points out that its demand for fees through March 2025 is a legal argument under the terms of § 14.01 of the Agreement, and not a judicial admission or an evidentiary admission. (Doc. 113, p. 6-7).

The Court finds NAI Global's argument persuasive. NAI Global's claim for fees through March 2025 pursuant to the acceleration provision of § 14.01, is not an evidentiary or judicial admission that the termination date of the Agreement is March 2025, for all purposes. NAI Global's position during this litigation, i.e., its legal argument, that it is entitled to damages through March 2025 upon proof of NAI Mobile's breach, has no bearing on or relevance to any time frame for NAI Mobile's claim for lost profits.

D. NAI Mobile's argument that NAI Global would not have terminated the Agreement after March 31, 2022.

NAI Mobile argues there is evidence that NAI Global would not have terminated the Agreement on March 31, 2022 pursuant to § 4.02. NAI Mobile points out that when the Agreement was terminated in January 2021, there was no mention of termination under § 4.02. NAI Mobile also argues that the evidence indicates that by March 31, 2022, with research and investigation, NAI Global would have decided not to terminate the Agreement. NAI Mobile also argues that "even if Global could have properly terminated the Member Agreement with the required nine month[] notice in March 2022, whether Global would have done so is a question of fact for the jury." (Doc. 100, p. 7-9) (underlining in original).

NAI Global argues that the evidence shows it would have terminated the Agreement as

soon as possible after NAI Mobile refused to protect the NAI Global trademark and good will, and the best evidence is the fact that NAI Global did terminate the Agreement. NAI Global points out that the parties' business relationship was irretrievably broken in January 2021, and they have been in litigation since that time. NAI Global also argues that the January 2021 termination letter, although citing breach of Article 6 as grounds for immediate termination, also serves as the requisite advance notice to trigger § 4.02's termination for any reason, effective after March 31, 2022. (Doc. 113, p. 7-9).

The jury need not determine <u>if</u> NAI Global "would have" terminated the Agreement in the future because it <u>did</u> terminate the Agreement in January 2021. The only question for the jury is whether NAI Global had a right to terminate the Agreement in January 2021 because of default on the part of NAI Mobile. If not, as a matter of law, the termination was valid as of April 1, 2022. In other words, the January 2021 notice of termination satisfied the condition of nine months written notice to NAI Mobile found in §4.02 (Doc. 100-1, p. 2).

E. <u>Interpretation of Section 4.02</u>

NAI Mobile argues that § 4.02 is ambiguous as to the appropriate lost profit damages cut-off date and the ambiguity should be construed against NAI Global, the drafter of the Agreement.  NAI Mobile interprets the phrase "may be terminated by either party at any time after March 31, 2022, with nine (9) months written notice to the other party" to mean that written notice could not be given until after March 31, 2022, and positing the quickest start, April 1, 2022, would result in termination December 31, 2022. From this, NAI Mobile argues that damages would be available up to that date, and not March 31, 2022. (Doc. 100, p. 9-10).

NAI Global argues that a plain reading of § 4.02 shows that the language does not require

either party to wait until March 31, 2022 to provide the requisite nine-month notice. NAI Global asserts that the plain meaning of the section is that "either party may terminate the Agreement any time after March 31, 2022, so long as there is nine month[] notice prior to termination." (Doc. 113, p. 9-10).

The phrase is not ambiguous. Section 4.02 plainly states that <u>termination</u> "may" occur at "any time after March 31, 2022" so long as the other party received notice nine months in advance of the termination date. The language does not support NAI Mobile's interpretation. " 'The construction and interpretation of an unambiguous written contract is an issue of law within the province of the court, as is the inquiry of whether the writing is ambiguous in the first instance. If the language is free from ambiguity, its meaning may be determined as a matter of law on the basis of the writing alone without resort to extrinsic evidence[.]' " <u>Bd. of Managers of Half Moon Bay Marina Condo. v. Bd. of Directors of Half Moon Bay Homeowners Ass'n, Inc.</u>, 186 A.D.3d 1679, 1680–81, 130 N.Y.S.3d 843, 845 (2020) (citations omitted).

DONE and ORDERED this 6th day of April 2022.


                                                s/ Kristi K. DuBose
                                                KRISTI K. DuBOSE
                                                UNITED STATES DISTRICT JUDGE