IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| NAI-MOBILE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 21-00032-KD-C |
| | ) | |
| NEW AMERICA NETWORK, INC, | ) | |
| d/b/a NAI GLOBAL, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

NAI Global is a national commercial real estate company.   NAI Global entered into an NAI Global Member Agreement with NAI Mobile, LLC (now known as CRE Mobile) in November 2017 that permitted NAI Mobile to use the NAI name and logo and obligated NAI Global to provide support structure, market access, marketing assistance and industry resources to NAI Mobile.   On January 15, 2021, NAI Global terminated the Agreement after NAI Mobile refused to separate from a principal, Pete Riehm, following reports and complaints that Riehm had participated in the January 6, 2021 protests in Washington D.C. and had made controversial statements.   NAI Mobile sued NAI Global for breach of contract.   A jury returned a verdict in NAI Mobile's favor and awarded damages for the rebranding expenses incurred by NAI Mobile in the amount of $86,437 and for lost profits in the amount of $1,164,000.

This action is before the Court on NAI Global's Renewed Motion for Judgment as a Matter of Law (doc. 169), the response filed by NAI Mobile (doc. 174) and NAI Global's reply (doc. 176). In its renewed motion, NAI Global argues that the Court should set aside the jury's verdict regarding lost profit damages because the parties never contemplated such a remedy. NAI Global also argues that the Court should set aside the jury verdict for rebranding expense damages because NAI Mobile did not establish that the branding expenses actually flowed from

NAI Global's breach. Upon consideration, and for the reasons set forth herein, the motion is DENIED.

## I. <u>Rule 50(b) Renewed Motion for Judgment as a Matter of Law</u>

The Court of Appeals for the Eleventh Circuit explains that "[a]fter 'a party has been fully heard on an issue during a jury trial,' a court may 'grant a motion for judgment as a matter of law [made pursuant to Rule 50(a)] against the party' if 'the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" <u>United States v. Approximately $299,873.70 Seized from a Bank of Am. Acct.,</u> 15 F.4th 1332, 1342 (11th Cir. 2021) (quoting Fed. R. Civ. P. 50(a) (bracketed text added). "The district court must deny the motion 'if substantial evidence exists in opposition to the motion such that reasonable people, exercising impartial judgment, might reach differing conclusions.'" <u>Id.</u> (quoting <u>Commodores Ent. Corp. v. McClary,</u> 879 F.3d 1114, 1130 (11th Cir. 2018) (internal quotation marks omitted). "That is, a judgment as a matter of law is appropriate only when 'the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict.'" <u>Id.</u> (quoting <u>Lipphardt v. Durango Steakhouse of Brandon, Inc.,</u> 267 F.3d 1183, 1186 (11th Cir. 2001) (internal quotation marks omitted)). "When considering the motion, the district court must 'review all of the evidence in the record and draw all reasonable inferences in favor of the nonmoving party ... without making any credibility determinations or weighing evidence.'" <u>Id.</u> (quoting <u>Commodores Ent. Corp.,</u> 879 F.3d at 1130 (internal quotation marks omitted)).

NAI Global's Motion for Judgment as a Matter of Law pursuant to Rule 50(a) was denied (docs. 153, 157). NAI Global has now filed a renewed motion under Rule 50(b). <u>McGinnis v.</u>

Am. Home Mortg. Servicing, Inc., 817 F.3d 1241, 1254 (11th Cir. 2016) ("the movant may file 'a renewed motion,' under Rule 50(b), after trial") (quoting Fed. R. Civ.P. 50(b)).[1] However, "[d]istrict courts lack authority to grant a Rule 50(b) motion on a ground not previously raised in a Rule 50(a) motion prior to the submission of the case to the jury." Johnston v. Borders, 36 F.4th 1254, 1270, n.31 (11th Cir. 2022) (citing Doe v. Celebrity Cruises, Inc., 394 F.3d 891, 902–03 (11th Cir. 2004)).   The grounds raised by NAI Global were raised in the Rule 50(a) motion.

"'The standard for granting a renewed motion for judgment as a matter of law under Rule 50(b) is precisely the same as the standard for granting the pre-submission motion [under 50(a)].'" McGinnis, 817 F.3d at 1254 (quoting Chaney v. City of Orlando, 483 F.3d 1221, 1227 (11th Cir. 2007) (alteration in original) (quoting 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2537 (2d ed.1995)). "Thus, as with motions under Rule 50(a), the question before a district court confronting a renewed Rule 50(b) motion is whether the evidence is 'legally sufficient ... to find for the party on that issue.'" McGinnis, 817 F.3d at 1254 (citing Fed.R.Civ.P. 50(a)(1)).

---

[1] In relevant part, Rule 50(b), captioned "Renewing the Motion After Trial; Alternative Motion for a New Trial" sets forth as follows: "If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. … the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b).

This action is before the Court on basis of diversity jurisdiction. Thus, the district courts "'apply the federal standard to assess whether the evidence presented at trial was sufficient to raise a question of fact for the jury, but state law supplies the substantive law that we apply' the federal evidentiary standard to." Brown v. R.J. Reynolds Tobacco Co., No. 15-13160, - - - F. 4th - - -, 2022 WL 2352420, at *7 (11th Cir. June 30, 2022) (citations omitted) (bracketed text added). Here, the law of the State of New York supplies the substantive law.[2]

## II. Lost Profits

> Lost profits are consequential damages when, as a result of the breach, the non-breaching party suffers loss of profits on collateral business arrangements. In the typical case, the ability of the non-breaching party to operate his business, and thereby generate profits on collateral transactions, is contingent on the performance of the primary contract. When the breaching party does not perform, the non-breaching party's business is in some way hindered, and the profits from potential collateral exchanges are "lost." … In New York, a party is entitled to recover this form of lost profits only if (1) it is demonstrated with certainty that the damages have been caused by the breach, (2) the extent of the loss is capable of proof with reasonable certainty, and (3) it is established that the damages were fairly within the contemplation of the parties.

---

[2] In this breach of contract action, the parties agreed that their "Agreement shall be construed according to the laws of the State of New York." (doc. 115-5, p. 9). Thus, the parties have raised their substantive legal arguments under New York law. Shapiro v. Associated Int'l Ins. Co., 899 F.2d 1116, 1118 (11th Cir. 1990) ("The district court, having obtained jurisdiction through diversity of citizenship, is bound to apply the substantive law of the state in which it is located.") (citing Erie R.R. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)). "This principle applies to a state's law regarding choice of laws." Id. (citing Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 1021, 85 L. Ed. 1477 (1941). In that regard, "[c]ontractual choice-of-law provisions are generally enforceable under Alabama law, at least for breach-of-contract claims." Alabama Aircraft Indus., Inc. v. Boeing Co., No. 20-11141, 2022 WL 433457, at *8 (11th Cir. Feb. 14, 2022) (citing Stovall v. Universal Constr. Co., 893 So. 2d 1090, 1102 (Ala. 2004) ("In a contractual dispute, Alabama law would have us first look to the contract to determine whether the parties have specified a particular sovereign's law to govern.")).

4

Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc., 487 F.3d 89, 109 (2d Cir. 2007).

Where a contract does not expressly discuss lost profits, "the court must take a 'common sense' approach, and determine what the parties intended by considering 'the nature, purpose and particular circumstances of the contract known by the parties ... as well as what liability the defendant fairly may be supposed to have assumed consciously.'" Schonfeld v. Hilliard, 218 F.3d 164, 172 (2d Cir. 2000) (quoting Kenford Co. v. County of Erie, 73 N.Y. 2d 312, 319, 537 N.E.2d 176, 179, 540 N.Y.S.2d 1, 4 (1989) ("Kenford II") (internal quotation marks and citation omitted)).

As raised at the conference on jury instructions, and in the Rule 50(a) motion, NAI Global objects to the Court's instruction as to the meaning of "fairly within the contemplation of the parties at the time of the contract."[3]  NAI Global agrees that to recover consequential[4] lost

---

[3]  The jury was given the following instruction on lost profits (doc. 169-1):

NAI Mobile also seeks to recover lost profits for the remainder of the contract term, from January 15, 2021 to March 31, 2022. There is a higher burden for proving lost profits than for proving rebranding expenses. To recover future lost profits, NAI Mobile must:

1) Establish that the damages have been caused by the breach,
2) Prove to a reasonable certainty the amount of the loss, and
3) Prove to a reasonable certainty that the damages were fairly within the contemplation of the parties at the time of the contract.

"Fairly within the contemplation of the parties" means that damages were foreseeable and probable if a party did not fulfill its obligations.

[4]  NAI Global explains that "NAI Mobile does not seek the lost profits that it would have received from NAI Global, but the lost profits it may have obtained through collateral business arrangements with other customers. As a result, NAI Mobile's alleged damages are consequential, not general" (doc. 169, p. 4, n.1). NAI Mobile takes the position that these lost profits were general damages (doc. 174, p. 6). The Court determined that the lost profit damages were consequential damages since they were losses from collateral business arrangements.

5

profits from collateral business arrangements under New York law, NAI Mobile must demonstrate "with certainty that the damages have been caused by the breach", provide proof of the loss with "reasonable certainty", and establish that "the particular damages were fairly within the contemplation of the parties" at the time the contract was made (doc. 169, p. 4-5). NAI Global also agrees that the last element is a "rule of foreseeability." (Id.).

However, NAI Global argues that the Court instructed the jury on an incorrect standard.[5] Specifically, the Court gave the instruction that "'[f]airly within the contemplation of the parties' means that damages were foreseeable and probable if a party did not fulfill its obligations." (doc. 169-1). NAI Global takes the position that this "meaning" applies when lost profits are general damages, but not consequential damages.

NAI Global argues that consequential lost profits damages are recoverable under a more stringent standard than "foreseeable and probable" (doc. 169, p. 4-17; doc. 176, p. 2-15). Specifically, NAI Global argues that lost profits are recoverable only when there is proof that "lost profits are contemplated by the parties" and "there is evidence, through contract or their relationship, that one of the parties accepted liability for these damages" (doc. 176, p. 4-6; doc. 169, p. 6-9). And to determine whether these consequential lost profits were "fairly within the contemplation of the parties at the time of the Agreement", the "courts must first look to the provisions of the contract regarding the available remedies upon default, and second, if the contract contains no such provisions, the commonsense rule to apply is to consider what the parties would have concluded had they considered the subject." (doc. 169, p. 5-11; doc 176, p. 4-

---

[5] NAI Global has not moved for a new trial on this alleged error. Rather, it urges the court to apply to "correct" law and find as a matter of law that NAI Mobile failed to meet its burden.

12) (citations and internal quotation marks omitted). NAI Global argues that "mere knowledge" of the possibility of profits is not sufficient to "place the burden of [consequential] lost profits damages upon a party" (doc. 169, p. 11-17).

NAI Global correctly asserts that the Court's instruction on the meaning of "within the contemplation of the parties" as "foreseeable and probable if a party did not fulfill its obligations" was influenced by Ashland Mgmt., Inc. v. Janien, 82 N.Y. 2d 395, 403 (1993) (doc. 169, p. 11), a case cited by both parties in briefing the Rule 50(a) motion for judgment as a matter of law (doc. 153, 155). The Ashland Court explained:

> A party may not recover damages for lost profits unless they were within the contemplation of the parties at the time the contract was entered into and are **capable of measurement with reasonable certainty**. The rule that damages must be within the contemplation of the parties is a rule of foreseeability. The party breaching the contract is liable for those risks foreseen or which should have been foreseen at the time the contract was made. The breaching party need not have foreseen the breach itself, however, or the particular way the loss came about. It is only necessary that loss from a breach is foreseeable and probable *(see,* Restatement [Second] of Contracts § 351; 3 Farnsworth, Contracts § 12.14 [2d ed 1990]).

Ashland Mgmt. Inc. v. Janien, 82 N.Y.2d 395, 403, 624 N.E.2d 1007 (1993) (emphasis added). NAI Global argues that "[s]ince *Ashland* only involved general damages, not consequential damages, the mere foreseeability test discussed in *Ashlan*d should not apply to the present claim for consequential damages." (doc. 169, p. 13) (italics in original). As a result, NAI Global argues that if the Court applies the correct law, it should find that there is insufficient evidence that NAI Global accepted or assumed liability for NAI Mobile's lost profits. Therefore, NAI Global argues that as a matter of law, NAI Mobile did not meet its burden to establish entitlement to lost profits.

Although NAI Global has termed the damages at issue in <u>Ashland</u> as general and not consequential, it remains that <u>Ashland</u> set forth the standard for consequential damages. <u>See</u> <u>Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.</u>, 487 F.3d 89, 111 (2d Cir. 2007) ("While **certainty of amount is not an element of general damages** in New York, it is an element of consequential damages. In addition to proving that the *existence* of damage is reasonably certain, and that the damages were foreseeable and within the contemplation of both parties, a party claiming consequential damages must also prove the *amount* of damage with reasonable certainty.") (emphasis added) (italics in original). But, the Court agrees that the analysis of "within the contemplation", in addition to foreseeability and probability, entails consideration of other factors.   "In determining the reasonable contemplation of the parties, the nature, purpose and particular circumstances of the contract known by the parties should be considered, as well as 'what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made.'" <u>Kenford II</u>, 73 N.Y.2d at 319, 537 N.E.2d at 179 (internal citations omitted).

   A. <u>Provisions of the Agreement</u>

As previously stated, whether consequential lost profits were "fairly within the contemplation of the parties at the time of the Agreement" such that it could be found to have assumed or accepted liability, "the courts must first look to the provisions of the contract regarding the available remedies upon default, and second, if the contract contains no such provisions, the commonsense rule to apply is to consider what the parties would have concluded had they considered the subject." <u>See</u>, pages 6-7.

As to the first inquiry, the provisions of the Agreement, NAI Global argues that the Agreement is silent as to consequential lost profits as a remedy for its breach, and therefore this indicates that lost profits were not within the contemplation of the parties at the time of the Agreement.   NAI Global also argues that Article 6.09 expressly rejects that lost profits from NAI Mobile's collateral business arrangements are recoverable because it states, "[i]n no event shall NAI [Global] be liable for any matter whatsoever relating to the use by Member of the service marks."   NAI Global takes the position that Article 6.09 evinces an intent by NAI Global to limit its liability with respect to NAI Mobile's outside contracts, not to expand it.

NAI Mobile responds that its claim for breach of contract did not involve the use of the Service Marks[6], and therefore, Article 6.09 is irrelevant.   NAI Mobile argues that the breach resulted in it being unable to use the Service Marks in any way. From this, NAI Mobile argues that "Article 6.09 is further evidence supporting the jury's verdict, because it waives [NAI Global's] liability in circumstances not present here, creating yet another inference that the contract, by waiving [NAI Global's] liability in those specific instances, did not intend to waive it elsewhere." (doc. 174, p. 14) (bracketed text added). Thus, NAI Mobile argues that NAI Global's liability for lost profits was within the contemplation of the parties.

Article 6.09 of the Agreement, captioned "Licensed Service Marks", provides in totality:

MEMBER ACKNOWLEDGES THAT THE SERVICE MARKS ARE
LICENSED TO MEMBER "AS-IS."   NAI [GLOBAL] DISCLAIMS ANY
EXPRESS OR IMPLIED WARRANTY, INCLUDING WITHOUT

---

[6]  NAI Mobile also points out that the Court denied NAI Global's defense based on Article 6.09, upon finding that the conduct which brought about this action did not involve the use of the NAI Service Marks. In the Order on summary judgment, the Court found that Article 6, captioned "Licensed Service Marks" which provided protections to the NAI Service Marks, was generally inapplicable because it addressed conduct on the part of the Member, NAI Mobile, not its principal or broker Pete Riehm (doc. 66).

LIMITATION, NON-INFRINGEMENT WITH RESPECT TO THE SERVICE
MARKS.   IN NO EVENT SHALL NAI BE LIABLE FOR ANY MATTER
WHATSOEVER RELATING TO THE USE BY MEMBER OF THE SERVICE
MARKS.

(Doc. 115-5, p. 5) (bracketed text added).

> "Under long-standing rules of contract interpretation, '[w]here the terms of a
> contract are clear and unambiguous, the intent of the parties must be found within
> the four corners of the contract, giving a practical interpretation to the language
> employed and reading the contract as a whole' " (*id.*, quoting *Ellington v. EMI
> Music, Inc.*, 24 N.Y.3d 239, 244, 997 N.Y.S.2d 339, 21 N.E.3d 1000 [2014]).
> Stated differently, a contract "must be read as a whole in order to determine its
> purpose and intent, and ... single clauses cannot be construed by taking them out
> of their context and giving them an interpretation apart from the contract of which
> they are a part"

Arista Dev., LLC v. Clearmind Holdings, LLC, No. 21-00979, 2022 WL 2572996, at *1

(N.Y. App. Div. July 8, 2022).

In context, Article 6.09 clearly relates to actions where the Member's use of the Service

Marks is challenged. To agree with NAI Global's interpretation would mean that regardless of

the nature of the breach or the damages incurred, NAI Global would never be liable.   This is so

because the whole of the Agreement relates to NAI Mobile's use the Service Marks. So, any

breach by NAI Global of the Agreement would "relate" to NAI Mobile's use of the Service

Marks. The Court declines to give such an expansive and unwarranted reading to this provision.

NAI Global also argues that because Article 4.02 states that the Agreement can be

terminated by either party with the requisite notice, giving the Agreement an "impermanent

nature', no reasonable inference can be drawn from the Agreement that the parties contemplated

future lost profits or that NAI Global would assume liability for NAI Mobile's future lost profits

if the Agreement was breached.   In support, NAI Global cites Millenium Expressions, Inc. v.

Chauss Mktg., Ltd., No. 02 CIV.7545 JCF, 2007 WL 950070, at *7 (S.D.N.Y. Mar. 30, 2007). In

Millenium the Court stated "it is evident that the parties did not anticipate lost profits being available for a breach of the Letter Agreement. Either party was entitled to terminate the contract, indicating that they understood that their relationship was not one of long-term interdependence such that future profits would hinge on adherence to the agreement."  However, Millenium is distinguishable from the case at bar.  In Millenium the parties could terminate the contract at any time with 90 days written notice.  The Agreement at issue provided for at least a 5 year term and required 9 months written notice. Millenium does not advance NAI Global's argument.

NAI Global next argues that Article 14.01- captioned "Remedies for Breach" –indicates that the parties did not contemplate that NAI Mobile would be entitled to lost profits damages. NAI Global argues that Article 14.01 addresses only NAI Mobile's obligation to pay certain membership and marketing assessment fees for the remainder of the term of the Agreement should NAI Mobile default. NAI Global argues that the plain language of Article 14.01 shows that the Agreement did not reserve any rights or remedies for NAI Mobile, and no reasonable inference can be drawn that it did.

NAI Mobile argues that the "parties specifically addressed lost revenue and profits" in the Agreement (doc. 174, p. 12). In support, NAI Mobile points to Article 14.01 captioned "Remedies for Breach" to argue that although the Agreement "did not explicitly set out a 'lost profits' remedy provision for the Member, it explicitly holds open the door for any remedies for breach in Section 14 – the relevant section of the contract for Plaintiff's breach claim." (Id., p. 12). NAI Mobile points out that Article 14.01 provides that if it had breached the Agreement, NAI Global would have been entitled to recover lost profits in the form of membership and marketing assessment fees (Id.). From this, NAI Mobile argues that an inference arises that if

NAI Global breached the Agreement, then NAI Mobile would have been entitled to recover lost profits in the form of lost commercial real estate contracts.

Article 14.01 does not indicate that any rights or remedies for breach were reserved for NAI Mobile, the Member. Article 14, is captioned "Remedies for Breach", and in Article 14.01 states as follows:

> Upon any Default by MEMBER, all unpaid Annual Membership Fees and Annual Marketing Assessments for the remainder of the Term shall be accelerated and immediately become due and payable in full. The obligation to pay Annual Membership Fees and Annual Marketing Assessments for the entire Term shall survive the expiration or early termination of this Agreement. This remedy is nonexclusive; and, NAI reserves all rights and remedies under this Agreement or otherwise available at law or in equity for MEMBER's Default, all of which shall be cumulative and nonexclusive.

(Doc. 115-5, p. 8-9). The Article speaks only to "Default by MEMBER" and NAI "reserve[d] all rights and remedies … for MEMBER's Default" (Id.). The Article fails to address default by NAI Global.   Therefore, the Court is not convinced that an inference can be made from the terms of Article 14.01 regarding the intent of the parties as it relates to lost profits if NAI Global breached the Agreement.

### B. The commonsense rule

When the Agreement is silent as to lost profits, the commonsense rule is to consider what the parties would have reasonably concluded had they considered lost profits. As stated, the Court considers the foreseeability and probability of lost profits and the nature, purpose and particular circumstances of the Agreement known by the parties, as well as "what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the

plaintiff reasonably to suppose that it assumed…" <u>Kenford II</u>, 73 N.Y.2d at 319, 537 N.E.2d at 179.

NAI Global argues that the parties' relationship indicates that liability for lost profits was not assumed or accepted. Specifically, NAI Global asserts that under New York law, for "lost profits to be assumed between the parties, one party must exercise near exclusive control over the profitability of the venture." (doc. 169, p. 10; doc. 176, p. 9-11).   NAI Global cites <u>Schonfeld v. Hilliard</u>, 218 F.3d at 175 in support.   However, <u>Schonfeld</u> did not require "near exclusive control over profitability" in order to recover lost profits, rather it merely noted that to be a fact in the case where lost profits were allowed. <u>Id</u>. at 175 ("Further, we noted that TWA had 'near exclusive control' over the marketing of the getaway packages and, therefore, the profitability of the business.")   But even so, for the lost profits sought and awarded by the jury in this case (profits that would have been realized through NAI Global network referrals), NAI Global exercised substantial control; without the membership rights, NAI Mobile could not receive these specific referrals.

NAI Global also argues that NAI Mobile presented no evidence during its case in chief to indicate that lost profits – and NAI Global's acceptance or assumption of liability for lost profits - were discussed or contemplated by the parties and without this evidence, lost profits damages are not available under New York law.   NAI Global also argues that common sense indicates that it would never accept liability for future lost profits of its Members. NAI Global points out that it would be "nonsensical, and an atrocious business model" for it "to agree to accept liability for the potentially millions of dollars of lost profits for each of the 185 NAI Global members, when" NAI Global was "only receiving a few thousand dollars in membership [and marketing

assessment] fees each year" and "equally nonsensical" since NAI Global had "no control whatsoever over NAI Mobile's ability to generate (or mitigate) its profits" (doc. 169, p. 10-11).

NAI Mobile responds that the testimony of NAI Global's President and CEO, Jay Olshonsky, is sufficient evidence for a reasonable jury to find that the parties contemplated lost profits at the time of the Agreement. NAI Mobile points out that Olshonsky testified that Members, in exchange for their membership and marketing assessment fees, received increased deal flow or increased business opportunities which may result in commercial real estate sales, competitive advantages in the commercial real estate market, "resources, relationships and opportunities", participation in a "global, international company", and "member-to-member" transactions for real estate sales, leases, or management which result in shared fees (doc. 174, p. 7).   The CEO explained that the "goal is always to increase the deal flow to the local offices, but it is not a guarantee" and that "[t]here was a deal flow from other members and NAI to NAI Mobile during the term of the contract" (Id., p. 10). NAI Mobile also pointed to the testimony of two NAI Mobile principals that the "expected, bargained-for benefits of the contract" were "direct and indirect referrals" for commercial real estate transaction, that they expected the payment of membership and marketing assessment fees for association with NAI Global would result in profits, and that NAI Mobile would not have contracted with NAI Mobile without this expectation (Id., p. 10-11). NAI Mobile argues that the commercial real estate deals, and corresponding profits, "that flow from the recognizability of the NAI flag are the only thing that Global has to sell." (Id., p. 11).

The Court agrees with NAI Mobile.   First, the nature and purpose of the Agreement was to provide NAI Mobile the ability to use NAI Global's valuable asset - the Service Marks and gain access to NAI Global network referrals.   For these privileges, NAI Mobile paid

membership and marketing assessment fees and agreed to meet certain requirements. Basically

the only thing required of NAI Global was to provide the exclusive use of the Service Marks to

NAI Mobile (in a defined territory) for a period of at least 5 years.   And it is evident that NAI

Global marketed the use of the Service Marks as a means for NAI Mobile to increase profits

(more deal flow was the benefit of the bargain). So it is only logical that NAI Global knew that

termination of the use of the Service Marks would result in lost profits. So when confronted with

the question as to "what liability the defendant fairly may be supposed to have assumed

consciously, or to have warranted the plaintiff reasonably to suppose that it assumed", the Court

concludes that a reasonable jury could find that NAI Global fairly may be supposed to have

assumed it would be liable for lost profits if it unreasonably terminated NAI Mobile's right to

use the Service Marks.

And while silence in the Agreement as to liability for lost profits is not determinative, in

the particular circumstance of this Agreement it is certainly noteworthy. The NAI Global

Member Agreement, as it is labeled, is clearly a form Agreement prepared by NAI Global for use

with any potential Member.   The Agreement provides numerous protections for NAI Global and

particularly the Service Marks.   And while the Agreement was entered into freely by two

sophisticated parties, there is no doubt that it provides significantly more protections for NAI

Global if the relationship went awry.   For example, included in those protections is Article 11,

which provides that NAI Global is "without liability of any nature" for terminating the

Agreement for certain types of defaults of NAI Mobile.   So, it would certainly be reasonable for

a jury to find that had NAI Global not contemplated or "assumed consciously" the liability for

lost profits, it certainly would have excluded liability for such in the Agreement.

C. <u>Causation</u>

NAI Global argues that because lost profits were limited to March 31, 2022, and that date has passed, the lost profits need not be a projection. NAI Global argues that the amount of lost profits is "entirely clear", and the "evidence in this case has shown that … NAI Mobile has not suffered **<u>any</u>** lost profits at all as a result of the termination of the Agreement, and thus has failed to establish that its lost profits were caused by NAI Global's breach of the Agreement (doc. 169, p. 18) (emphasis in original); doc. 176, p. 13). Citing the trial testimony of NAI Mobile's witnesses, NAI Global points out that NAI Mobile had no evidence "of losing a single client as a result of the termination" and that revenue increased by 47% from the year before the breach of contract. NAI Global argues that allowing NAI Mobile "to recover $1,179,000 in lost profits damages *on top of* the $2.1 million in revenues it made in 2021, would not 'put the plaintiff in the same economic position [it] would have occupied had the breaching party performed the contract'"[7] but instead, would permit a "financial windfall despite no actual loss in profits." (Id., p. 18-19) (italics in original).

NAI Mobile argues that the testimony and evidence demonstrate that but for NAI Global's breach, it "would have earned far more in a year marked by an industry comeback" (doc. 174, p. 19). NAI Mobile points out that the commercial real estate market experienced a "huge upswing" as the "industry recovered from Covid" and had it had the NAI brand to attract business it would not otherwise have, its profits would have been higher. (Id.). NAI Mobile also argues that even if the actual data had been used to calculate lost profits, as opposed to the projections from the time of the breach, the calculation would not be diminished. NAI Mobile

---

[7] Citing <u>Oscar Gruss & Son, Inc. v. Hollander</u>, 337 F. 3d 186, 196 (2nd Cir. 2003).

argues that "because the projected revenues attributable to Plaintiff's NAI affiliation were calculated and expressed as a ratio of total profits" the "higher profits attributable to unaffiliated results would merely indicate higher profits that would have been attributable to the NAI brand, creating a larger damages award." (Id., p. 20).

Viewing the evidence of record and drawing all reasonable inferences in favor of NAI Mobile, the Court finds that there is a legally sufficient evidentiary basis for a reasonable jury to find for NAI Mobile on the issue of causation. NAI Mobile's testimony and evidence at trial established that NAI Global's breach of the Agreement resulted in NAI Mobile's loss of the NAI Service Marks. As a result, NAI Mobile lost the commercial real estate transactions that use of the Service Marks would have created. See Kenford I, 67 N.Y.2d at 261, 493 N.E.2d at 235 ("In other words, the damages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes."). That NAI Mobile experienced an increase in profits or revenues on commercial real estate transactions which were unrelated to the use of the NAI Service Marks, does not provide a basis to find that NAI Global's termination of the Agreement, and consequent loss of use of the NAI Service Marks, did not cause NAI Mobile harm.

D. Proof to a reasonable certainty

NAI Global argues that NAI Mobile's forensic accountant testified that NAI Mobile's income tax returns showed a loss in 2019 and minimal profits in 2020, but despite this absence of profit, NAI Mobile now inconsistently and inaccurately claims that it would have made over $1 million in profits solely from transactions related to NAI Global (doc. 169, p. 19; doc. 176, p.

14). NAI Global argues that because NAI Mobile had a profitable year without the NAI brand, "it cannot establish any lost profits with the requisite degree of certainty" (doc. 169, p. 21-22).

NAI Global also argues that without regard to the reliability of the forensic accountant's methodology or the volume of evidence he reviewed, the calculation of lost profits was based on unreliable data because the data on the source or category of the real estate transactions – as either attributed or not attributed to the NAI flag - was provided by principals of NAI Mobile based on their unsupported, "incentivized", "unscientific, after-the-fact and self-serving attribution of sales to NAI Global" (Id., p. 20-21; doc. 176, p. 13).[8] NAI Global argues that the evidence at trial established that "real estate transactions are inherently speculative", and without guarantee of commissions or payment, and "without establishing the critical nexus between a referral due to the NAI brand and a closed transaction that actually paid, the lost profits have not been and cannot be proven with the high standard associated with proving the requisite certainty" (Id., p. 22-23). NAI Global also argues that the forensic accountant's inaccurate projection that NAI Mobile would earn approximately $1.3 million in 2021, when it actually earned $2.1 million, is another reason to find that his estimate does not prove the lost profits with the requisite certainty (Id., p. 22).

NAI Mobile points out that NAI Global raised at trial, the issue that the 2019 net loss and low profitability in 2020 were evidence that the forensic accountant's calculations "were not

---

[8] NAI Global points out that NAI Mobile's witnesses testified "there was no way to know which past transactions were truly related to the NAI brand" and that there was "no way to know" what business was lost as a result losing the NAI brand (doc. 169, p. 21). In response, NAI Mobile points out that its representative testified as to one specific loss of a customer (doc. 174, p. 23). NAI Mobile also points out the "logical impossibility" of proving a negative, i.e., the phone calls it did not receive, and argues that this impossibility required its forensic expert to use the Before and After Method – examining historical date to predict future results. (Id., p. 22).

reasonably certain" (doc. 174, p. 20). NAI Mobile argues that its forensic accountant provided "ample testimony" describing his method to confirm "the reliability of Plaintiff's financial records by comparing the General Ledger containing individual transaction data with Plaintiff's regular profit and loss statements and income tax returns" (Id.). NAI Mobile also points out that the trial testimony detailed the process it used to identify "the source of each commercial real estate transaction and determine if and to what extent each transaction was attributable to its NAI affiliation." (Id., at 21).

NAI Mobile also argues that although the forensic accountant's projections were lower than actual revenues, the trial testimony established that the commercial real estate market experienced an overall rebound from the effects of the Covid 19 pandemic. NAI Mobile points out that its forensic accountant also testified that NAI Mobile was unable to participate as profitably from the recovery since it was no longer part of the NAI network.

The Court considered the methodology applied by the forensic accountant; the argument, exhibits, and testimony regarding the methodology and the process to identify the source of the commercial real estate transactions for past years, i.e., the underlying data; as well as the evidence presented regarding the market upswing during the post-Covid recovery period. Viewing the evidence of record, including specifically the testimony of NAI Mobile's forensic accountant and corporate witnesses, and drawing all reasonable inferences in favor of NAI Mobile, the Court finds that there is a legally sufficient evidentiary basis for a reasonable jury to find that NAI Mobile had proven its lost profits to a reasonable certainty. McGinnis, 817 F.3d at 1254 ("Thus, as with motions under Rule 50(a), the question before a district court confronting a renewed Rule 50(b) motion is whether the evidence is 'legally sufficient ... to find for the party on that issue.'") (citing Fed.R.Civ.P. 50(a)). Under New York law "[d]amages resulting from the loss of future profits are often an approximation. The law does not require that they be

19

determined with mathematical precision. It requires only that damages be capable of measurement based upon known reliable factors without undue speculation." <u>Onekey, LLC v. Byron Place Assocs., LLC,</u> 200 A.D. 3d 896, 160 N.Y.S. 3d 301, 305 (2021) (citation omitted).


### III. <u>Mitigation</u>

NAI Global argues that NAI Mobile failed to mitigate its damages because it did not obtain an agreement with another national real estate company. NAI Global argues that because NAI Mobile failed to mitigate, NAI Global should not be liable for the lost profits. NAI Global cites to NAI Mobile's representative's testimony that he did not attempt to join another national network "simply because either the fees were higher than NAI's, or he simply was not interested."   NAI Global also argues that the rebranding expenses were not an attempt to mitigate damages, since NAI Mobile has sued for the costs of rebranding (doc. 169, p. 24-25; doc. 176, p. 15-6).

NAI Mobile argues that its immediate rebranding kept its business going and "mitigated damages." NAI Mobile argues that the trial testimony established that it did not "simply refuse to consider another national flag" but instead "there was no parallel option: other national real estate companies do not offer the find of independence of the NAI model, and that independence and ownership was part of what made the NAI flag attractive[.]" (doc. 174, p. 24-26).

> Failure to mitigate damages is an affirmative defense to a breach of contract claim, which "requires the defendant to establish not only that the plaintiff unreasonably failed to mitigate, but that reasonable efforts would have reduced the damages." [ ] "Whether a party puts forth sufficient effort to mitigate damages is a question of fact and typically resolved during trial."

Mohegan Lake Motors, Inc. v. Maoli, 559 F. Supp. 3d 323, 346 (S.D.N.Y. 2021) (citations

omitted).

> "Mitigation" of damages is a similar but distinct concept. It is an affirmative
> defense whereby a defendant can show extenuating facts and circumstances that
> provide a basis for reducing the amount for which a defendant is liable. [ ]. It is an
> "unusual" defense which considers what reasonable steps, if any, a plaintiff could
> have taken subsequent to an incident giving rise to their injuries. [ ] Plaintiffs
> need only employ a reasonable and proper effort, and it does not matter, in
> retrospect, if another, better means of limiting their liability had existed.

In re Madigan, No. 15-31545, 2020 WL 9215967, at *6 (Bankr. N.D.N.Y. Aug. 28, 2020), *aff'd*

*sub nom.* Madigan v. Straight Line, L.L.C., No. 3:20-CV-1087 (GLS), 2021 WL 4477164

(N.D.N.Y. Sept. 30, 2021) (citations omitted).

The Court finds that NAI Global is not entitled to a finding, as a matter of law, that NAI

Mobile failed to mitigate its expenses.

## IV. __Rebranding expenses__.

NAI Global argues that under New York law, NAI Mobile may recover expenses

incurred because of the breach of the Agreement, but not all future business expenses are

recoverable (doc. 169, p. 24-25; doc. 176, p. 15-16). NAI Global argues that NAI Mobile cannot

recover rebranding expenses because the Agreement clearly would not "go on in perpetuity", and

therefore, NAI Mobile would have incurred these expenses anyway when the Agreement

expired, i.e., they were "inevitable". NAI Global argues that because NAI Mobile would have

incurred these expenses regardless of the breach, as testified by its representatives at trial, and

despite the possibility that the Agreement would have been renewed, NAI Mobile's claim for

rebranding expenses should be denied as a matter of law.

NAI Mobile argues that the rebranding expenses incurred were damages related solely to NAI Global's breach of the Agreement. NAI Mobile points out that the breach created the need for NAI Mobile to immediately rebrand and remove any vestige of the NAI name, and but for that breach, it would not have incurred expenses to do so. NAI Mobile argues that NAI Global's inevitability argument is speculative because there was no reason prior to January 15, 2021, to assume that NAI Mobile would not have continued as an NAI affiliate for a third contractual period. NAI Mobile also points out that NAI Global did not argue that the evidence in support of its rebranding expenses was insufficient (doc. 174, p. 24-27).

The Court does not find NAI Global's argument persuasive. Arguably, at some unknown point in the future, NAI Mobile may have needed to rebrand. However, this speculation or inevitability argument does not supplant the fact that NAI Mobile had to immediately rebrand in January 2021 because NAI Global terminated the Agreement and consequent license to use the NAI Service Marks. Moreover, drawing all reasonable inferences from the evidence in favor NAI Mobile, the non-moving party, the Court finds that the evidence presented by NAI Mobile was sufficient to support the jury's verdict as to rebranding expenses. Accordingly, NAI Global's motion for judgment as a matter of law as to the award of rebranding expenses is denied.

## IV. **Conclusion**

Upon consideration, and for the reasons set forth herein, NAI Global's motion for judgment as a matter of law is DENIED.

DONE and ORDERED this the 2nd day of August 2022.

s/ Kristi K. DuBose
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE

22